UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Anthony M. Werts, | ) | C/A No. 4:08-3291-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Major Anderson; Capt. Middleton; Sgt. Maney; Sgt. Lark; Ms. McFadden, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Anthony M. Werts, filed this action under 42 U.S.C. § 1983[1] on September 30, 2008, alleging violations of his constitutional rights. Based on the change of address filed by plaintiff on September 14, 2009, plaintiff is no longer incarcerated. At all times relevant to the allegations in the complaint, plaintiff was a pretrial detainee at the Greenwood County Detention Center. ("GCDC"). Defendant McFadden filed a motion to dismiss on March 3, 2009. Because plaintiff is proceeding  pro se, he was advised on or about March 5, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendant's  motion could result in dismissal of his complaint. Plaintiff filed a response in opposition on March 12, 2009. Defendants Anderson, Middleton, Manley, and Lark filed a motion for summary judgment on June 15, 2009. (Document #47). Because plaintiff is proceeding pro se, he was advised on or about June 17, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response in opposition on June 29, 2009. (Doc. #52).

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges a constitutional violation due to medical indifference and conditions of confinement. Specifically, plaintiff alleges as follows, quoted verbatim, in part:

> On Wed. 9/17/08, Allen L. Davis telling me what I need to do about were[sic] I had a blizter[sic] on my hand. I talked to Ms. McFadden about it on 9/16/ 08. She looked at me stupid like didn't need one and walk[sic] out the door. On 9/17/08 Ms. McFadden was giving out meds on bottom teir in B-unit. Mr. Davis said I need to get a bandade from the nurse for my hand. Ms. Arnette heard me telling him to do something about it also. Plus he call me a white cracker. I talked to Ms. Bollman about she said that there's nothing can be done about it. He came up stairs and started to butt in to what I was telling Ms. Bollman. Sgt. Lark came back to B-unit Ms. Bollman talked to him. Ms. Arnette told me to back up I'm moving. Sgt. Manely said so, no body at this time gave me a reason. On 9/18/08 went talked to Capt. Middleton about the way I have been treated by placeing me in a cell that is cold and nasty due to my health. She told me that she will see about this. They put somebody else in here with me before I talk to Capt. Middleton. I tell her that their isn't enough room for one much longer two. I'm the one that talks to Capt. about get moved due to my medical status (HIV). They move him to B-Unit when I ask to be move because the cell and C-Block is so nasty. I wrote a sick call to the nurse to let her know that my heath is at risk by being in an environment that is cold and nasty. 9/18/08 talked to Ms. McFadden about my medical condition and being in a cold cell. She told me that isn't a medical issue. And there isn't [sic] she can do. After I talked to her went to talk to Major Anderson, Capt. Middleton, Ms. McFadden was there and said that it was alright as long as I eat three meals a day. Eating does not slow it down only medication. She also [sic] that bacteria can't live in the cold. But somebody with HIV and off of meds. is different than everybody else. Capt. Middleton said that I could call my sister and get her to bring me some money to get me at least two pair of thermal underware[sic]. They said that they moved me for my security from Allen Davis. Major Phillip C. Anderson stated this. But it's a security risk to put me in a nasty cell with hair, lent and other things stuck to gray stuff in the window seal it. And there is a urine smell coming from the window. DEHEC [sic] has my viral load and CD4C count on hand you can get that from them.

(Complaint).

Plaintiff requests "1.5 million dollars and 100 thousand for each day I'm in this nasty, cold cell." (Complaint).

## B.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## C. INJUNCTIVE RELIEF

To the extent plaintiff is requesting any declaratory or injunctive relief, the claims would be moot as he is no longer incarcerated at the GCDC. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

## III. MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS ANDERSON, MIDDLETON, MANLEY AND LARK

Defendants Anderson, Middleton, Manley, and Lark (hereinafter "defendants") filed a motion for summary judgment along with supporting memorandum, affidavits, and exhibits.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

fact."  In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.

## A. CONDITIONS OF CONFINEMENT

As previously stated, plaintiff alleges that while a pretrial detainee at GCDC, his constitutional rights were violated by being housed in a cell that was "cold and nasty" which put his health in danger since he has HIV. Plaintiff states in his complaint that they moved him there due to a security risk with another inmate. Further, plaintiff asserts that he was informed by Capt. Middleton that he could call his sister to bring him some money to purchase two pairs of thermal underwear.

Defendants submitted the affidavit of Major Phillip C. Anderson who attests that he is employed by the Sheriff of Greenwood County as the Director of the GCDC. Anderson attests that based upon a review of plaintiff's file, it appears that he did meet with plaintiff on at least one occasion and believed that the issues had been resolved after the meeting. (Anderson affidavit, doc. #47-2). Any time an inmate is involved in an argument with another inmate, one of the inmates has to be moved for security reasons. <u>Id</u>. Therefore, the issues related to plaintiff's cell assignment were handled appropriately in that moving the inmate after his argument did maintain the safety and security of the institution, staff and inmates. <u>Id</u>. The temperature in the GCDC is maintained for comfort of all inmates and is  constantly monitored to try and ensure the GCDC does not get too hot or too cold. <u>Id</u>. However, there are inmates with different temperature needs and every effort is made to keep the temperature appropriate. <u>Id</u>. As to plaintiff's complaint concerning the cleanliness of his

cell, it is the responsibility of each inmate to clean his own cell and inmates are given cleaning supplies daily and the GCDC staff responds to any complaints of other problems. Id. Anderson asserts that based on his review of plaintiff's file, he believes that plaintiff was treated appropriately and within constitutional guidelines and that he has not violated any constitutional rights or any other rights of plaintiff. Id.

Defendants submitted the affidavit of Luke Lark, Operations Lieutenant over the security of the GCDC. (Lark Affidavit, doc.#47-3). Plaintiff complained about being moved from "B" Unit to "C" Unit after being in an argument with another inmate in September. Id. It was appropriate to move this inmate after his argument with inmate Alan Davis in September 2008, for security reasons. Id. The plaintiff complained about the temperature in the cells, however the temperature is continually monitored. Since different inmates have different temperature requests, the temperature is maintained at a level to keep everyone comfortable. Id. If an inmate states he is cold, he is able to buy thermal underwear. Id. If the inmate wants thermal underwear brought from the outside, he has to get that approved. Id. Lark attests that it is his understanding that Captain Middleton did approve that plaintiff could receive thermal underwear from the outside. Id. The GCDC does not separate HIV inmates as they do not know which inmates actually have HIV. Id. The only time inmates are put in special housing for medical reasons is if medical orders it. Id. Based on a review of the plaintiff's file, it appears he has at all times been treated appropriately and the same as all other inmates. Id. At no time has this inmate been denied treatment or treated differently from any other inmate. Id. Lark attests that he acted in accordance with the policies and procedures of the GCDC at all times in his dealings with the inmate and is not aware of anyone denying this inmate's constitutional rights or any other rights. Id.

Defendants submitted the affidavit of Rhonda Manley who attests that she is employed by the Sheriff of Greenwood at the GCDC as a Sergeant. (Manley affidavit, doc. #47-4). As a Sergeant, Manley is also a shift Commander when on duty and supervises the other officers on her shift but does not supervise the medical staff as they are not employees of the Sheriff. Id. Manley asserts that she is not aware of any policy to separate HIV inmates as the GCDC cannot ask who has HIV. Id. If medical orders an inmate to be housed in a certain housing arrangement, that would be forwarded to the administrative staff for a final decision. Id. On September 17, Manley spoke with Lieutenant Butler about the argument between plaintiff and inmate Alan Davis. Id. Lieutenant Butler made the decision to move plaintiff due to security concerns of leaving two inmates who were arguing in the same dorm. Id. The administrative staff are the only ones who can administratively move an inmate and she advised plaintiff of this procedure. Id. Plaintiff also complained about wanting thermal underwear and she advised him on September 27 that any requests to bring in thermal underwear from the outside had to be approved by the administration. Id. Captain Middleton approved that thermals could be brought in to be given to the inmate. Id. However, Manley asserts that she is not aware of thermals ever being brought in for plaintiff but if they were, they would have been given to plaintiff. Id. Plaintiff has been housed in Unit "C" and Unit "B" which are both considered high risk security cells where inmates are locked in their cells. Id. Manley attests that she acted in accordance with the polices and procedures of the GCDC at all times in her dealings with plaintiff and did not violate any constitutional rights or any other rights of this inmate. Based upon her review of the plaintiff's file, he has at all times been treated appropriately by all staff at the GCDC and not treated any differently from any other inmate. Id.

Defendants submitted the affidavit of Sharon Middleton who attests that she is employed by the Sheriff of Greenwood County at the GCDC as a Captain and Assistant Jail Administrator. (Middleton affidavit, doc. #47-5). According to a review of plaintiff's complaint, he disagrees with the medical treatment he has received, he does not like the cell assignment that he has received, and he believes the GCDC is too cold. Id. Medical care at the GCDC is handled through a contract with an outside medical provider and none of the employees of the Sheriff are involved in the medical care at any time. Id. If an inmate requests medical treatment, he is referred to the nurse for that medical care and Middleton is unaware of any denial of medical care by the medical staff at the GCDC. Id. Middleton asserts that while plaintiff mentions that he is HIV positive and should receive a different cell assignment, the GCDC does not ask if inmates are HIV positive, as that is not a factor that can be used in housing determinations. Id. If medical decides that an inmate requires different housing, they will let the GCDC know and they will make accommodations in accordance with any referrals from medical. Id. Middleton has no knowledge that plaintiff has been treated differently from any other inmate at GCDC. Id. It is normal procedure to separate inmates when they are arguing with each other, and that was the appropriate course of action in this matter. Id. Plaintiff was moved from "B" unit to "C" unit, but there is not that much difference between the two units. Id. Middleton spoke with plaintiff on several occasions upon his request and believed that each time they spoke, the issues were resolved. Id. Middleton attests that she spoke with plaintiff about the cell temperature, his cell placement and medical issues. Id. Each time they met or spoke, she explained the rules of the GCDC and believed that they had resolved the issues. Id. As to the complaint of not receiving thermal underwear, generally inmates have to purchase thermal underwear by getting family members to deposit money into their account. Id. However, since plaintiff had a negative

balance in his inmate account, any money that would have been put in there would be used to satisfy the negative balance. Id. As a result, Middleton made an exception and allowed plaintiff to have his sister bring thermal underwear in for him. Id. Plaintiff's sister never brought in any thermal underwear, despite his assertion that she would. Id. Middleton contends that she acted in accordance with the policies and procedures of the GCDC at all times in her dealings with plaintiff and at no time violated any constitutional rights or any other rights of this inmate. Id. Based upon her review of the plaintiffs' file, he has at all time been treated appropriately at the GCDC. Id.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--

even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that any named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants. Strickler, supra Further, plaintiff has failed to show any express intent on the part of the defendants to punish him. Based on the reasons discussed above, the undersigned recommends that summary judgment for the defendants be granted.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other

things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The undersigned concludes that the plaintiff has failed to present evidence that defendants violated his constitutional rights. Furthermore, even if the allegations are true, plaintiff has not shown any specific injury as a result of his allegations and any allegations of injury would be *de minimis*. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.

## B.  MEDICAL INDIFFERENCE

In the present case, the plaintiff's allegations concerning medical indifference are brought against  Major Anderson, Captain Middleton, Sergeant Manley and Sergeant Lark, all employees of the Sheriff of Greenwood County. The undersigned notes that these defendants are not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.  Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).  Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.  *Id.*  Under these principles, the plaintiff has not alleged sufficient facts stating any

claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that these defendants were personally involved with any alleged denial or delay of treatment or that they deliberately interfered with plaintiff's medical treatment. Additionally, plaintiff fails to show anything more than *de minimis* injury. Therefore, any claims against the defendants for medical indifference fails.

## C.  QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that  plaintiff is unable to state a constitutional claim against them.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

## D. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the GCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the

Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the GCDC and, thus, state officials acting in their official capacity while employed by the GCDC. Therefore, they are entitled to Eleventh Amendment immunity in their official capacity from monetary damages.

### E. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### IV. DEFENDANT McFADDEN'S MOTION TO DISMISS

Ms. McFadden filed a motion to dismiss asserting that plaintiff has failed to allege facts sufficient to constitute a claim for deliberate indifference to a serious medical need by allegedly failing to provide a band-aid for his hand blister. Additionally, McFadden asserts that the cold or nasty nature of plaintiff's cell does not constitute a serious medical need. McFadden argues that plaintiff has failed to satisfy the objective and subjective components needed to establish a Constitutional right violation related to medical care. McFadden further argues that when a

plaintiff's injuries are *de minimus*, no constitutional violation has occurred. McFadden contends that plaintiff's allegations indicate he is only concerned about the possibility of future harm and has acknowledged no physical harm resulted from the actions or failure to act on the part of defendant McFadden.

## A.  STANDARD UNDER MOTION TO DISMISS

Defendant McFadden brings her motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegation in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. <u>Mylan Laboratories, Inc. v. Matkari</u>, 7 F.3d 1130,1134 (4th Cir. 1993). When a claim is challenged under this Rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.

## B.  ANALYSIS

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the

"unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

. . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

<u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." <u>Id.</u> at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which

he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case  under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").  Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts

19

prior to the Supreme Court's decision in <u>Farmer v. Brennan</u>, <u>supra</u>, held that "repeated acts of negligence could by themselves constitute deliberate indifference, <u>Farmer</u> teaches otherwise."); <u>Sellers v. Henman</u>, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3rd Cir. 1990); and <u>Smart v. Villar</u>, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendant McFadden's actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." <u>Jackson v. Fair</u>, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. <u>See</u> <u>Brown v. Thompson</u>, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. <u>See</u> <u>Smart v. Villar</u>, 547 F. 2d 112 (10th Cir. 1976); <u>Lamb v. Maschner</u>, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. <u>Russell v. Sheffer</u>, 528 F. 2d 318, 319 (4th Cir. 1975).

As previously stated, McFadden asserts that plaintiff has not alleged any physical harm resulting from the actions or failure to act on the part of McFadden but only complained about the possibility of future harm. Plaintiff filed a response to the motion to dismiss asserting, as alleged in the pleadings, that McFadden refused to give him a band-aid for a blister on his hand, that she knew of his HIV status, and that his "viral load was dangerously low from a DEHEC [sic] representative"

but did nothing about him being housed in a cold, nasty cell. Plaintiff asserts that HIV can be serious and that "defendant McFadden is just a nurse that does not have the knowledge for HIV." (Response, doc.#40).

As plaintiff has not alleged any injury as a result of his allegations that defendant McFadden did not give him a band-aid for a blister and did not have him moved from the Unit he was being housed which he alleges was cold and dirty, plaintiff has failed to show any physical harm or injury as a result of his allegations as to defendant McFadden. Here, the plaintiff has not alleged any specific injuries and any allegations of injury are *de minimis*. Plaintiff alleges what could have happened as a result of his allegations. Speculation, however, falls short of actual serious or significant injury. Moseley v. King, 2006 WL 2827555 (D.S.C. 2006). Thus, it is recommended that defendant McFadden's motion to dismiss be granted in that no claim against this defendant rises to the level of a Constitutional violation of deliberate indifference to a serious medical need. Therefore, even taking the allegations as true, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[2]

---

[2] In the motion to dismiss, the parties argue factual allegations. However, these factual allegations do appear to be limited to those contained within the pleadings. If facts outside of the pleadings were allowed, it would have to be addressed under Rule 56 of the Federal Rules of Civil Procedure.

## V.  CONCLUSION

For the reasons stated herein, it is RECOMMENDED that the motion to dismiss filed by defendant McFadden (doc. #30 ) be GRANTED and the motion filed by the remaining defendants for summary judgment (doc. #47) be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 6,  2009
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**